UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GEORGE CONSTANTINE ET AL.,<br><br>                              Defendants. | 21-CR-530 (SHS)<br><br><br>OPINION |

SIDNEY H. STEIN, U.S. District Judge.

In October 2022, Dr. Andrew Dowd moved to recuse this Court from presiding over the impending trial of this action on the grounds that the court's impartiality might reasonably be questioned under 28 U.S.C. § 455(a). The Court denied that motion on the record during the final pretrial conference on November 17. The trial of Dr. Dowd and George Constantine, Esq., commenced on November 28 and continued through December 16, when the jury returned a guilty verdict against both defendants on counts of conspiring to commit mail fraud and wire fraud, as well as substantive mail fraud and wire fraud counts. This Opinion sets forth in fuller measure the reasons given orally by the Court for denying Dowd's motion to recuse the Court.

## I.    Statement of Facts

Dr. Andrew Dowd is an orthopedic surgeon who has been found by a jury to have participated in an elaborate and extensive fraud scheme. From 2013 to 2018, hundreds of individuals were recruited to serve as "victims" of orchestrated trip-and-fall accidents and obtain millions of dollars in personal injury damages from property owners and their insurance carriers. Five defendants who planned and operated the scheme had been indicted in April 2019 for conspiracy to commit mail and wire fraud. Defendant Peter Kalkanis managed the conspiracy, while defendants Kerry Gordon, Bryan Duncan, Robert Locust, and Ryan Rainford served as "runners" who identified accident sites, recruited patients, transported them to and from medical and legal appointments, and instructed the patients how to fake injuries. Kalkanis and Gordon pleaded guilty before trial, and Duncan, Locust, and Rainford were each found guilty following a trial in May 2019. The evidence at that trial included testimony from Kalkanis that two doctors, Sady Ribeiro and Andrew Dowd, knew full well that many of the patients they treated were involved in staged accidents, and that two lawyers, George Constantine and Marc Elefant, knew the cases they took on were staged. (18-cr-289, ECF Nos. 159, 161, Tr. 1057, 1065-66, 1072, 1212.)

Two years later, in August 2021, the Government indicted another set of five defendants in connection with their participation in the scheme: attorneys George

Constantine and Marc Elefant were indicted for allegedly filing fraudulent lawsuits on behalf of the recruited individuals to obtain personal injury settlements, while loan provider and owner of an MRI facility Dr. Adrian Alexander, Dr. Sady Ribeiro, and Dr. Andrew Dowd were charged with performing unnecessary medical procedures, including surgeries, on the participants in order to inflate the settlement values of the personal injury lawsuits. Defendants Alexander, Ribeiro, and Elefant each pled guilty prior to trial, while defendants Constantine and Dowd were tried last month and, as noted, found guilty by a jury.

Dowd claims that statements made by this Court during the earlier sentencing proceedings of Duncan and Locust as well as during Alexander's plea allocution indicate that the Court is not impartial and should recuse itself. Dowd first notes that during the trial and sentencing of Duncan and Locust, "lawyers for these defendants argued that the runners were at the bottom of the conspiracy ladder, and that the most culpable individuals – the lawyers, doctors, and funders – had gone unpunished." (18-cr-289, ECF No. 86 at 4.) He then points to the Duncan sentencing in January 2020, during which the Court "urge[d] the government to continue their investigation here," because, based on the testimony during the Duncan and Locust trial, "the lawyers and the doctors were heavily involved in this." (18-cr-289, ECF No. 252, 27:12-14.) A year later, at Locust's sentencing in July 2021, defense counsel contended that the "worst people involved in this conspiracy were people who had never, ever been prosecuted." (18-cr-289, ECF No. 368, 15:18-19.) The Court responded by saying:

> I assume, I would hope, and I made it clear to the government during the trial and at other proceedings in this case, that the government is pursuing the corrupt lawyers, the corrupt doctors who were involved in this scheme. That was a theme during the [Duncan and Locust] trial . . . I'm not disagreeing with you, but I'm not a prosecutor, I'm a judge. I would hope the government is following through on a continuing investigation. I don't know whether they are or not.

> (*Id.*, 15:23-16:8.)

Finally, at Dr. Alexander's plea allocution in August 2022, the Court noted, "[t]his is one of those cases that confounds me. Highly educated professionals - doctors, lawyers, others are involved - were involved in a scheme . . . And the funders and the lawyers and the doctors profited normally handsomely, and the patients did not. It's a frightening insight into human nature." (21-cr-530, ECF No. 79, 25:3-6.)

## II.   Discussion

28 U.S.C. § 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Judges generally "determine appearance of impropriety [] not by considering what a straw poll of the only partly informed man-in-the-street would show[,]

but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). However, because "[l]itigants are entitled to an unbiased judge; not to a judge of their choosing . . . [a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Id.* at 1312.

When an opinion expressed by the court is based on testimony and evidence presented at trial, whether that trial concerns the defendant seeking recusal or other defendants in related proceedings, it will only represent grounds for recusal in extremely rare circumstances. The Supreme Court has held that "opinions formed by judges on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976) ("The rule of law . . . is that what a judge learns in his judicial capacity[,] whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification."). The Second Circuit has declined to require recusal when the judge "had undoubtedly formed opinions about [the defendant's] likely guilt during the course of [a co-conspirator's] trial at which the judge presided[.]" *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004). And "[a] judge's comments during a proceeding that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (internal citation omitted).

The Second Circuit recently applied this standard in *United States v. Wedd*, 993 F.3d 104, 115 (2d Cir. 2021). Following the conviction at trial of a co-defendant of Wedd's, the district judge stated to counsel regarding that co-defendant's impending sentencing: "if I were to rank people in terms of their levels of culpability, [the co-defendant] would be at the very bottom of all of these defendants, including [two other co-defendants], and far below Mr. Wedd." Brief on Behalf of Defendant-Appellant Darcy Wedd, 2019 WL 2173505, at *13. Wedd argued, *inter alia*, that the district court's statement comparing the culpability of a co-defendant and Wedd "created the appearance of partiality." *Wedd*, 993 F.3d at 116.

The trial court judge denied Wedd's motion to recuse herself, and the Second Circuit affirmed, writing that "[a] judge cannot be said to have manifested partiality simply by expressing a view of a particular defendant's culpability based on information that has been presented to the court." *Wedd*, 993 F.3d at 115. The panel specifically noted that, "[i]n multi-defendant cases, judges are often called upon to sentence one or more co-defendants while others are still awaiting trial. Questions of relative culpability may sometimes be unavoidable, particularly when the defendant being sentenced claims to have played a

lesser role in an overall conspiracy." *Id.* at 117. Thus, the trial court's comments in *Wedd* did not demonstrate "'a deep-seated favoritism or antagonism that would make fair judgment impossible,'" and therefore recusal was not required. *Id.* (citing *Liteky*, 510 U.S. at 555.)

Here, in response to questions of relative culpability in a multi-defendant conspiracy, this Court stated that it assumed and hoped the Government would "pursu[e] the corrupt lawyers, the corrupt doctors," and "follow[] through on a continuing investigation" of those actors. (18-cr-289, ECF No. 368, 15:23-16:8.) The Court made plain that the source of its view that the lawyers and doctors were heavily involved in the trip-and-fall conspiracy was the testimony adduced during the Duncan trial concerning how the conspiracy functioned, and recalled that that was "a theme during the trial." (*Id.*; *see also* 18-cr-289, ECF No. 252, 27:10-18.)

The Court made clear that the decision of whether to investigate and charge potential defendants was not for the Court, when it said, "I'm not the prosecutor, I'm the judge," and "those people are not in front of me." (18-cr-289, ECF No. 368, 16:5-8.) As in *Wedd*, "based on information that ha[d] been presented to the court" and when speaking to co-conspirators who when "being sentenced claim[ed] to have played a lesser role in an overall conspiracy" than others, including lawyers and doctors, the Court quite appropriately opined on "questions of relative culpability." *Wedd*, 993 F.3d at 115, 117. These comments were a fair summary of the testimony adduced during the *Duncan* trial and in the course of the sentencing proceedings following that trial. No reasonable person apprised of the facts in that case, which was the source of the Court's opinion, would conclude, based on these comments, that the Court harbors the requisite "antagonism that would make fair judgment impossible" to warrant recusal.[1]

Although recusal may be appropriate "when a judge expresses a personal bias concerning the outcome of the case at issue," *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992), the Court here has not expressed any interest in seeing a particular outcome as to any specific defendant. *United States v. Diaz*, 797 F.2d 99, 100 (2d Cir. 1986) (per curiam), illustrates impermissible bias concerning the outcome of a case as distinguished from the facts here. The district judge in *Diaz*, together with the prosecutor, wrote to their U.S. Senator to suggest an amendment to the law under which Diaz's conviction of that count had been vacated on appeal, in order that the conduct of the defendant would be encompassed by its terms in the future. *See id.* When the defendant appealed, the Second Circuit determined that these acts evidenced the judge's manifest personal bias for a particular outcome: i.e., punishment of that specific defendant for a particular act. *Id.* In

---

[1] Moreover, "comments made at pretrial hearings" or other proceedings like those in question here where "no jury was present, could not prejudice petitioners at *trial*." *A.S. Goldmen, Inc. v. Phillips*, No. 05-cv-4385, 2006 WL 1881146, at *44, *55 (S.D.N.Y. July 6, 2006) *report and recommendation adopted*, 2007 WL 2994453 (S.D.N.Y. Oct. 15, 2007) (collecting cases).

contrast, stating what the evidence was in the *Duncan* trial – the asserted involvement of doctors and lawyers in the trip-and-fall conspiracy – and encouraging *investigation* of a *category* of defendants in a complex conspiracy, without any particular goal as to the result of the investigation or suggesting the guilt of any particular doctor or lawyer, as the Court did here, does not represent bias toward a specific defendant or a particular outcome. Indeed, during a pretrial conference in this case, the Court reiterated that despite its familiarity with the alleged fraud from the *Duncan* trial, its role was decidedly *not* to determine the outcome of the case against Dowd or the other defendants, reminding them that, "of course, it will be up to the jury to decide whether or not the government can prove its case beyond a reasonable doubt." (21-cr-530, ECF No. 34 at 5:21-23.)

Other cases Dowd cites are similarly inapposite.[2] In *United States v. Antar*, the Third Circuit held that the trial judge ought to have recused himself when, during sentencing of the defendant, he stated: "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." 53 F.3d 568, 573 (3d Cir. 1995). The circuit court determined that this constituted "in stark, plain and unambiguous language" a statement that the judge's "goal in the criminal case, from the beginning, was something other than what it should have been and, indeed, was improper." *Id.* at 576. Unlike in *Antar*, this Court's opinion that the role of the doctors and lawyers in this scheme warranted further investigation does not indicate that it had a goal "from the beginning" to convict Dowd.

The Third Circuit distinguished this statement requiring recusal from one that did not. After a U.S. district judge sitting in the District of Colorado refused to accept the defendant's guilty plea for insufficiently admitting criminal wrongdoing, he stated that "[t]he obvious thing that's going to happen to [the defendant] is that she's going to get convicted[.]" *United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995). The district court then denied a motion to disqualify on those grounds, and the Tenth Circuit affirmed, stating that "the comments reflected the judge's belief that [the defendant] was likely to be convicted if she went to trial. Such an opinion of what the jury was likely to find does not show that the judge could not possibly render fair judgment." *Young*, 45 F.3d at 1415-16. Here, the Court's opinion was not nearly as explicit as the judge's admitted opinion in *Young* in which recusal was denied.

---

[2] (*See also* 21-cr-530, ECF No. 86 at 5-6) (citing *Washington v. William Morris Endeavor Entm't, LLC*, 2014 U.S. Dist. LEXIS 41277, at *2 (S.D.N.Y. Mar. 24, 2014) (*denial* of motion for recusal on basis of ruling in another matter against same defendant, and speeches at educational programs); *United States v. Liburd*, No. 17-cr-296 (PKC), 2019 U.S. Dist. LEXIS 11850, at *24 (E.D.N.Y. Jan. 24, 2019) (*denial* of motion for recusal in which the court properly directed the course of a *Franks* hearing and admonished defense counsel in an appropriate effort to protect defendant's right to unconflicted counsel).

Moreover, "judges are frequently, and quite properly, required to make assessments of a defendant's culpability before a jury has returned a verdict." *Wedd*, 993 F.3d at 116. For example, to determine whether a coconspirator's statement that otherwise would be hearsay should be admitted, the court must determine by a preponderance "that a conspiracy existed, that the defendant and declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing Fed. R. Evid. 801(d)(2)(E)). "On occasion, that may also entail a finding by the judge that a yet-to-be-tried co-defendant was, in fact, a member of the charged conspiracy." *Wedd*, 993 F.3d at 117. Indeed, the Court had already had to assess the extent of Dowd's involvement in this matter ahead of his trial; specifically, the Court issued a warrant finding probable cause to search the email accounts of Dowd and others. (*See* 21-cr-530, ECF No. 96 at 2.) But just as these common pretrial assessments of a defendant's involvement do not ordinarily require the court to recuse itself from later proceedings, this Court's acknowledgment of the role of doctors and lawyers, including Dowd, in this conspiracy before Dowd was tried does not create an impression that fair judgment of Dowd by the jury during his trial would be "impossible" such that recusal is required.

Finally, while there is no explicit time limit for filing a motion for recusal, recusal applications are to be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," in order to avoid waste of judicial resources and to prevent a movant from "hedging its bets against the eventual outcome." *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333, 334 (2d Cir. 1987). Dowd filed this motion more than a year after this Court made the core of the comments that Dowd now challenges, and over a year after Dowd was indicted and made aware of the charges against him. The distance of this motion from the allegedly offending comments as well as the proximity to Dowd's trial provide a quintessential example of the gamesmanship that a preference for prompt filing of recusal motions is meant to avoid.

Accordingly, Dowd's motion for recusal pursuant to 28 U.S.C. § 455(a) is denied.

Dated:  New York, New York
      January 31, 2023

Sidney H. Stein, U.S.D.J.